IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **05-cv-2284-AP**

In re:
**JAMES L. BAKER**
**o/d/s K&L ASSOCIATES, INC. and**

**JANICE E. BAKER**
**o/d/s K&L ASSOCIATES, INC.**

      Debtors ,

**DANIEL A. HEPNER, Chapter 7 Trustee**

      Plaintiff /Appellee**,**
v.

**AMERICREDIT FINANCIAL SERVICES INC.**

      Defendant/Appellant.

---

Civil Action No. **06-cv-169-AP**

In re:
**WILLIAM DAVID WILSON and**

**CHERYL ANN WILSON,**

      Debtors.

**CHARLES C. SCHLOSSER, Chapter 7 Trustee**

      Plaintiff /Appellee**,**
v.

**DAIMLERCHRYSLER SERVICES AMERICAS LLC,**
**successor by merger to DaimlerChrysler North America, LLC.**

      Defendant/Appellant.

1

Civil Action No. **06-cv-197-AP**

In re:
**DEMETRA RAMEY and**

**JAMES RAMEY**

      Debtors.

**DANIEL A. HEPNER, Chapter 7 Trustee**

      Plaintiff /Appellee**,**

v.

**DAIMLERCHRYSLER SERVICES AMERICAS LLC,**
**successor by merger to DaimlerChrysler North America, LLC.**

      Defendant/Appellant.

## MEMORANDUM DECISION ON APPEAL

Kane, J.

### <u>Introduction</u>

The three cases before me have been consolidated for purposes of appeal due to the common questions of law at issue in each of them.  Jurisdiction is uncontested and proper pursuant to 28 U.S.C. § 158(c)(1) and Fed. R. Bankr. P. 8001(e).  I have read the parties' pleadings and pertinent portions of the record.  Being fully advised in the premises, oral argument would serve no useful and efficient purpose.

The Appellant/Defendants appeal rulings in which the bankruptcy courts held perfection of a security interest in a motor vehicle occurs upon filing of the mortgage in the Department of Motor Vehicle's electronic database.  I agree with the bankruptcy

courts that this event is determinative.  I depart from their holdings, however, to the extent I further conclude that once the mortgage and title data is entered into the Central Registry, perfection relates back to the time the mortgage and title documents were delivered to the county clerk's office.

I begin my analysis briefly setting forth the bankruptcy context in which these cases must be evaluated.  I then resolve the issue the parties agree is dispositive of whether the bankruptcy trustees may avoid the creditors' liens: whether under Colorado's certificate of title act a security interest is perfected upon filing of the mortgage and title information in the Department of Motor Vehicle's electronic database or upon delivery of the necessary paperwork to the clerk and recorder's office.  Next, I address Appellants' contention they are entitled to equitable relief pursuant to <u>Commerce Bank v. Chambers (In re Littlejohn)</u>, 519 F.2d 356 (10th Cir. 1975).  Finally, I evaluate Appellants' assertion the CCTA violates due process guarantees of the Fourteenth Amendment of the United States Constitution.

<u>**Undisputed Facts & Procedural History**</u>

*In re Baker*

Baker purchased and took possession of a new Jeep from the Lithia automotive dealership on August 2, 2004.  In exchange for financing the purchase, Baker granted AmeriCredit a security interest in the vehicle.  Two weeks later, on August 16, 2004, Lithia delivered the lien and title documentation to the Larimer County Clerk and Recorder.  On September 28, 2004, the Colorado Division of Motor Vehicles (DMV)

issued a certificate of title for the vehicle, noting August 30, 2004, as the "Date Accepted" and the "Date Filed."  Baker filed Chapter 7 bankruptcy on October 20, 2004.

Baker's trustee in bankruptcy sought to avoid AmeriCredit's lien as a preference under 11 U.S.C. § 547(b).  In response, AmeriCredit asserted the enabling loan defense of 11 U.S.C. § 547(c)(3)(B), claiming the trustee was precluded from avoiding the lien because AmeriCredit perfected its interest within twenty days of Baker's taking possession of the Jeep.  After a thorough analysis of Colorado's Certificate of Title Act (CCTA), the bankruptcy court held "a lien on a motor vehicle becomes perfected at the time it is filed for public record by the entry of that lien into the state's Central Registry," and thus, the lien was avoidable because AmeriCredit's interest was not noted for public record until August 30, 2004, eight days after the window had closed for satisfying the requirements of the enabling loan defense.  Hepner v. AmeriCredit Fin. Serv., Inc. (In re Baker), 338 B.R. 470, 481 (Bankr. D. Colo. 2005).

AmeriCredit now appeals the bankruptcy court's ruling, essentially contending it perfected its lien within Section 547(c)(3)(B)'s twenty day grace period for doing so, because perfection under the CCTA occurs upon delivery of the necessary paperwork to the county clerk and recorder's office.

### In re Wilson

Wilson purchased and took possession of a new vehicle from the Champion automotive dealership on July 14, 2004.  In exchange for financing the purchase, Wilson granted DaimlerChrysler a security interest in the vehicle.  Fifteen days later, on July 29,

4

2004, Champion delivered the mortgage and title information to the Weld County Clerk

and Recorder.  The clerk entered the lien and title information into the Central Registry

on September 20, 2004.  The title indicates the "Date Accepted" and "Date Filed" as

September 20, 2004.  Wilson filed Chapter 7 bankruptcy on October 18, 2004.

The trustee in Wilson's case also sought to avoid the lien as a preference under

Section 547(b).  Heavily relying on Judge Tallman's rationale in Baker, Schlosser v.

DaimlerChrysler Serv. N. Am. (In re Wilson), No. 04-32586, slip op. at 3 (Bankr. D.

Colo. Jan. 3, 2006), Judge Brooks held that because perfection under the CCTA occurs

upon filing the mortgage in the Central Registry, DaimlerChrysler's interest was

avoidable because it was not perfected until September 20, 2004, well beyond the twenty

day grace period for satisfying the requirements of the enabling loan defense.  Id. at 4.

DaimlerChrysler now appeals the bankruptcy court's ruling, like AmeriCredit,

arguing it is entitled to the enabling loan defense because its lien was perfected when it

delivered the required paperwork to the clerk's office.

### In re Ramey

Ramey purchased and took possession of a new vehicle from the Champion

dealership on December 11, 2004.  In exchange for financing the purchase, Ramey

granted DaimlerChrysler a security interest in the vehicle.  Ramey filed Chapter 7

bankruptcy on December 23, 2004.  Champion delivered the lien and title information to

the Weld County Clerk and Recorder on December 27, 2004.  The clerk entered the lien

and title data into the Central Registry on January 6, 2005, and a certificate of title was

issued on February 6, 2005.  The certificate of title indicates January 6, 2005 as both

the"Date Accepted" and "Date Filed."

The trustee sought to avoid DaimlerChrysler's lien with its strong arm powers

under 11 U.S.C. 544(a).  The bankruptcy court, Judge Tallman, again relying on the

Baker decision, Hepner v. DaimlerChrysler Serv. N. Am. (In re Ramey), 338 B.R. 878,

881 (Bankr. D. Colo. 2006), held the lien was unperfected at the time Ramey filed for

bankruptcy and therefore avoidable under Section 544(a).  See id. at 882.

Judge Tallman also addressed DaimlerChrysler's argument it is entitled to

equitable relief pursuant to Commerce Bank, 519 F.2d 356.  Id. at 881-82.  Concluding,

however, that "[a]ny delay experienced by [DaimlerChrysler in perfecting its security

interest] was the result of the design and operation of Colorado's Certificate of Title

Act," Judge Tallman held equitable relief was not appropriate under the circumstances.

Id.

DaimlerChrysler now appeals the bankruptcy court's ruling on the same basis as

the appellants in Baker and Wilson; claiming perfection of a security interest in a motor

vehicle occurs upon delivery of the necessary mortgage and title paperwork to the county

clerk.

### Standard of Review

A district court reviewing a bankruptcy court judgment shall set aside only clearly

erroneous findings of fact.  Fed. R. Bank. P. 8013.  Conclusions of law, however, are

reviewed de novo.  In re Miniscribe Corp., 309 F.3d 1234, 1240 (10th Cir. 2002).

Applying these standards, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. P. 8013.

## Discussion

The merits of the parties' arguments must be evaluated in the context of United States bankruptcy law. Pertinent here is Section 547(c)(3)(B) of the Bankruptcy Code, known as the enabling loan exception, which prohibits a trustee from avoiding a creditor's security interest for a loan used to acquire the encumbered property "if, among other things, the security interest [was] perfected on or before 20 days after the debtor receive[d] possession of such property." Fidelity Fin. Serv., Inc. v. Fink, 522 U.S. 211, 212 (internal quotations and citations omitted).[1] Nonetheless, for the enabling loan exception to apply, the final act necessary to achieve perfection under state law must have occurred on or before twenty days of the debtor's taking possession of the collateral, regardless of any retroactive effective date designated by a relation back provision. Id. at 216.

Also relevant here is Section 544(a) of the Code, known as the strong arm clause, which "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien

---

[1]Since the debtors filed bankruptcy in these cases, the enabling loan exception has been updated to extend the twenty day grace period to thirty days, effective for cases filed after October 17, 2005. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08 §§ 201(b), 217, 119 Stat. 42.

claimant without notice possesses as of the date the bankruptcy petition is filed." In re Charles, 323 F.3d 841, 842 (10th Cir. 2003)(applying 11 U.S.C. § 544(a)).  Accordingly, a trustee may avoid any unperfected liens on bankruptcy estate property.  Id.  Similar to the enabling loan exception, state law controls whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a).  Id. at 842-43.  Section 544(a) differs from section 547(c)(3)(B) in at least one critical aspect, however, because section 544(a) limits the trustee's strong arm avoidance power where a state relation back provision "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  Fink, 522 U.S. at 217 (quoting Code § 546(b)(1)(A)).

### A.  In Colorado, Perfection of a Security Interest in a Motor Vehicle Occurs Upon Entry of the Mortgage Notice Into the Central Registry, But Relates Back to the Time of Delivery

Appellants contend perfection of a security interest in a motor vehicle in Colorado occurs upon delivery of the mortgage and title paperwork to the state's authorized agent. Appellees, on the other hand, assert the lower courts were correct in concluding perfection of a security interest occurs upon entry of the lien and title information into the state's electronic database.

The Colorado Certificate of Title Act provides the exclusive means for perfecting security interests in motor vehicles in Colorado.[2]  Codding v. Jackson, 132 Colo. 320,

_____

[2]Unless otherwise noted, all references to the CCTA (Colo. Rev. Stat. §§ 42-6-101-147) in this Memorandum Order are to the 2004 version in effect at the time the

323, 287 P.2d 976, 978 (Colo. 1955).  No court has directly addressed the issue of when

perfection of a security interest in a motor vehicle occurs under the CCTA.  Thus, my

task is to predict how the Colorado Supreme Court would decide the matter if faced with

the facts and circumstances at play here.  Midamerica Constr. Mgmt. Co., Inc. v. MasTec

N. Am., Inc., 436 F.3d 1257, 1262 (10th Cir. 2006).  I may employ a broad range of legal

precedent in doing so, including analogous state and federal decisions, as well as taking

into account the "the general weight and trend of authority."  Id.

In construing the CCTA, my goal is to effectuate the intent of the General

Assembly.  See Garhart ex rel. Tinsman v. Columbia/Healthone, LLC, 95 P.3d 571, 591

(Colo. 2004).  Unless doing so results in ambiguity, the best evidence of legislative intent

is the plain language of the statute.  Id.  I thus begin my analysis with an examination of

the plain language of the relevant provisions of the Act.

The CCTA states, in pertinent part:

Security interests upon motor vehicles

(1) . . . .  Any mortgage . . . intended by the parties to the mortgage .
. . to encumber or create a lien on a motor vehicle, to be effective as a valid
lien against the rights of third persons, purchasers for value without notice,
mortgagees, or creditors of the owner, shall be filed for public record and
the fact of filing noted on the owner's certificate of title or bill of sale
substantially in the manner provided in section 42-6-121; and the filing of
such mortgage with the director's authorized agent and the notation by the
agent of that fact in the filing of the certificate of title or bill of sale
substantially in the manner provided by section 42-6-121 shall constitute
notice to the world of each and every right of the person secured by such

---

debtors filed bankruptcy.

mortgage.

Colo. Rev. Stat. § 42-6-120(1)(2004).  The plain language of section 120 indicates an

effective valid lien is created upon 1) filing the mortgage for public record and notation of

that fact, and 2) filing the mortgage with the county clerk and notation of that fact; both

of which must be carried out pursuant to Section 121.[3]  See id.  Hence, an effective and

valid lien is apparently achieved only *once* the filing and notation in accordance with

Section 121 takes place.  See id.

Section 121 reads, in pertinent part:

Filing of mortgage

> The holder of any chattel mortgage on a motor vehicle desiring to
> secure the rights provided for in this part 1 and to have the existence of the
> mortgage and the fact of the filing of the mortgage for public record noted
> in the filing of the certificate of title to the encumbered motor vehicle shall
> present the signed original . . . of said mortgage . . . and the certificate of
> title or application for certificate of title to the motor vehicle encumbered to
> the authorized agent of the director . . . .  The filings may be either with
> paper documents or electronically. . . . Upon the receipt of said electronic
> or original [mortgage] . . . and certificate of title or application for
> certificate of title, the authorized agent, if satisfied that the vehicle
> described in the mortgage is the same as that described in the certificate of
> title or filed title, shall file within the director's authorized agent's motor
> vehicle database notice of such mortgage or lien in which shall appear the
> day and hour on which said mortgage was received for filing, . . . the date
> of the mortgage, the day and year on which said mortgage was filed for
> public record, and such other information regarding the filing of the
> mortgage in the office of the director's authorized agent as may be required
> by the director by rule.  The director's authorized agent shall electronically
> transmit, when the director's authorized agent uses an electronic filing

---

[3]"'Authorized agents' means the county clerk and recorder in each of the counties
of the state . . . ."  § 42-6-102(1).

system, the certificate of title, application for certificate of title, and mortgage information to the database of the director for maintenance of a central registry of motor vehicle title information pursuant to section 42-6-147. . . .

Id. § 121.

Section 121 instructs a mortgagee seeking to make a valid and effective lien on the motor vehicle to deliver evidence of the mortgage with a certificate of title, or an application for one, to the county clerk and recorder.  See id.  From there, the clerk reviews the information to ensure the mortgage and certificate of title pertain to the same vehicle, and if so, files the mortgage in its own database and transmits this information to the director's Central Registry.[4,5,6]  § 42-6-121.  Among the information the clerk must note in the Central Registry is "the day and hour on which said mortgage was received for filing, . . . the date of the mortgage, [and] the day and year on which said mortgage was filed for public record."  Id.  Thus, it appears perfection occurs once this information is entered in the Central Registry, because it is at that point the mortgagee provides "notice to the world" of its interest in the motor vehicle.  See §§ 42-6-120, 121.

---

[4]Known as the Central Registry, the director's motor vehicle database is where the director maintains "electronic files for all certificates of title, mortgages, liens . . . ."  § 42-6-147.

[5]The CCTA defines "File" as "creation of or addition to an electronic record maintained for a certificate of title by the director or an authorized agent of the director . . . ."  § 42-6-102(4.4).

[6]In addition to the requirements of Section 121, Section 117 requires the authorized agent to ascertain whether the mortgage and title information is true.  § 42-6-117.

Based on the above analysis, I find the CCTA clear as to the time at which perfection of a security interest occurs.  Nonetheless, to the extent any ambiguities may yet be present, I observe it is a well-established concept that perfection under the CCTA is contingent on providing effective valid notice of the mortgage to third parties.  <u>See</u> authorities cited <u>infra</u> pp. 11-15.  This view is espoused in key holdings from the Colorado Supreme Court and Tenth Circuit, as well as several lower courts that have had occasion to construe the CCTA to some degree.  <u>Id.</u>

The most fundamental pronouncement regarding perfection under the CCTA was made by the Colorado Supreme Court in <u>First Nat'l Bank of Ogallala v. Chuck Lowen, Inc</u>.  128 Colo 104, 108, 261 P.2d 158, 160 (Colo. 1953).  There, explaining the General Assembly's reasons for adopting the CCTA, the court held:

> Under our former policy in Colorado, the validity of chattel mortgages as to innocent third parties was dependent on recording or filing them in the office of the proper county clerk, analogous to the provisions for protection of title to real estate.  However, the mobility of motor vehicles and their frequent sale in states far distant from the county of the mortgage filing has resulted in a new method of *protection by means of showing mortgages on the title certificate*, which can be carried with the car, rather than by record in the files of a distant and probably unknown county. . . .

<u>Id.</u> (emphasis added).

The <u>Lowen</u> holding is significant because it expresses an understanding that a motor vehicle mortgage is protected from competing third party interests (i.e. perfected) by noting the mortgage on the face of the certificate of title.  <u>See</u> <u>id.</u>  Clearly, then,

perfection of a mortgage under the CCTA is inextricably intertwined with the issuance of a certificate of title, because this is the mechanism for providing notice.  Id.; Donald K. Funnell, Secured Transactions: Certificates of Title - Delivery or Notation?  The Lender's Dilemma, 37 Okla. L. Rev. 618, 622 (1984)(noting Colorado and twenty one other states use "the certificate of title as a perfection device").

Twelve years after Lowen, the Tenth Circuit relied heavily on that case in addressing "whether under [the CCTA], a chattel mortgage noted on the title certificate to a motor vehicle is void as to third parties where it has been recorded in the wrong county."  Loye v. Denver U.S. Nat'l Bank, 341 F.2d 402, 404 (10th Cir. 1965).  The facts were similar to those generally at issue here, as the bankruptcy trustee claimed access to the motor vehicle on grounds the mortgage was unperfected at the time the debtor filed bankruptcy.  Id. at 403.  The court held that because the mortgage had been noted on the certificate of title and recorded with the Colorado Director of Revenue (i.e. substantial compliance with the CCTA perfection requirements), "[n]otice to creditors, subsequent lienholders and purchasers was therefore adequate and complete," and the trustee could not avoid the lien.  Id. at 405.

Similar to Lowen, Loye is significant because it indicates the key to achieving perfection is notice of the mortgage, see id. at 403 (also indicating "perfection" is determined by 2004 CCTA sections 120 and 121), and this appears to be particularly true in the context of trustees attempting to exercise their strong arm powers.  See id. (the

13

trustee was attempting to avoid the lien under section 70 of the old Bankruptcy Code, which is the predecessor to section 544(a) of the current Code).  Nonetheless, the Tenth Circuit also expounded on the nature and policy of the CCTA, observing,

> the purpose of the [CCTA] was to provide a simple and effective means of ascertaining the title to and interests in motor vehicles and this means an examination of the title certificate itself.  In other words, the provision in the [CCTA] requiring notation on the title certificate of the filed chattel mortgage was designed to make that certificate conclusive as to the rights of the parties *with respect to the matter of notice of prior encumbrances*.

Id. at 405 (emphasis added).  Hence, the inference is that notice under the CCTA is not effective, and thus perfection is not complete, *until* the certificate of title showing the mortgage is issued.  Id.

Since the judicial constructions of the CCTA in Lowen and Loye, several courts have either held or stated in dicta that perfection occurs when the certificate of title is issued and the mortgage noted on its face.  The Colorado Supreme Court made this observation in Beneficial Fin. Co. v. Schmuhl, 713 P.2d 1294, 1294 (Colo. 1986)(noting in dicta, where mobile home considered motor vehicle, "[t]he lien on the mobile home was properly perfected by notation on the certificate of title as required by [Colorado's UCC and the CCTA]"), and the Colorado Court of Appeals reached this conclusion in Vance v. Casebolt.  841 P.2d 394, 399 (Colo. Ct. App. 1992)("[The CCTA] requires that, for a security interest in motor vehicles to be perfected, the secured party must note its security interest on the certificate of title.").

14

Notwithstanding the decisions following Judge Tallman's construction of the

CCTA in Baker, 338 B.R. 470, at least two bankruptcy courts in the District of Colorado

also have held perfection, or effective notice of the security interest to third parties,

requires notation of the mortgage on the certificate of title.  In re Grizaffi, 23 B.R. 137,

140 (Bankr. D. Colo. 1982)("Under [the CCTA,] to perfect a security interest in a motor

vehicle . . . the mortgage must be shown on the face of the title."); Yeager Trucking v.

Circle Leasing Corp. (In re Yeager Trucking), 29 B.R. 131, 134 (Bankr. D. Colo.

1983)(holding that "perfection" is governed by current Section 121, which requires

among other things, notation of the mortgage on the certificate of title); see also Gen.

Motors Acceptance Corp. v. Martella (In re Martella), 22 B.R. 649 (Bankr. D. Colo.

1982)(holding perfection occurs only once requirements of current Sections 120 and 121

are fulfilled); Lewis v. Hare (In re Richards), 275 B.R. 586 (Bankr. D. Colo.

2002)(approving of pertinent holding in Martella, 22 B. R. 649); cf. ENT Fed. Credit

Union v. Chrysler First Fin. Serv. Corp., 826 P.2d 430, 432 (Colo. Ct. App.

1992)(construing statute similar to CCTA and holding notation of mortgage on certificate

of title to manufactured home constitutes perfection).

Likewise, several legal commentators have concluded perfection under the CCTA

is achieved through issuance of the certificate of title and notation of the mortgage

thereon.  Funnell, supra, at 622 (observing Colorado is a state "mak[ing] the perfection

event either the indication of the lien on the certificate of title or the issuance of the

certificate of title after indication"); D. Kent Meyers, Multi-State Vehicle Transactions

15

Under the Uniform Commercial Code: An Update, 30 Okla. L. Rev. 834, 891 (1977)(noting perfection under current CCTA Section 120 occurs "on filing & issuance" of the certificate of title); Note, Security Interests in Motor Vehicles Under the UCC: A New Chassis for Certificate of Title Legislation, 70 Yale L. J. 995, 996-97 (1961)(noting Colorado has a "complete" title act which usually means perfection of the lien occurs upon its notation on the certificate of title); see also Mark R. Koontz, Manufactured Homes Under UCC Revised Article 9: A New Conflict Between Certificates of Title and Financing Statements, 80 N.C. L. Rev. 1829, 1834 (2002)(citing Colo. Rev. Stat. § 42-6-120 (2001) and noting "[c]urrently, every state's certificate of title statute provides that the only way to perfect a security interest in the goods covered by a certificate is by notation on the certificate of title"); William L. Jones, The Effect of Certificate of Title Acts on Foreign Auto Liens, 29 Rocky Mtn. L. Rev. 384, 388 (1957)(under the CCTA, "no lien or encumbrance on a vehicle is valid as against third parties unless noted on the certificate of title").

The above authorities are unanimous to the extent effective notice of the mortgage, and hence its perfection, is tied to issuance of the certificate of title.  I have found no case law or commentary that would suggest a contrary conclusion.  Furthermore, although the authorities I have cited indicate the mortgage must be noted on the face of the certificate of title to provide effective notice, they are based on sufficiently analogous versions of the CCTA to support the conclusion that, in 2004, perfection was achieved by entry of the mortgage notice in the Central Registry.  Compare e.g., Colo. Rev. Stat. §§ 13-6-19,

16

20 (1953) <u>with</u> C.R.S. §§ 42-6-120, 121 (2004).[7]  I reach this conclusion for two related reasons.

First, in 2004, effective notice still depended on the reconciliation and approval of the mortgage and certificate of title or application for a certificate of title.  <u>See</u> §§ 42-6-120, 121.  Second, keeping in mind the interrelatedness of the mortgage and title, the addition of the electronic filing and Central Registry components did not alter the

---

[7]Section 13-6-19 reads, in pertinent part:

Any mortgage intended by the parties thereto to encumber or create a lien on a motor vehicle, to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees or creditors of the owner shall be filed for public record and the fact thereof noted on the owner's certificate of title, or bill of sale substantially in the manner provided in section 13-6-20; and the filing of such mortgage with the authorized agent and the notation by him of that fact on the certificate of title or bill of sale, substantially in the manner provided in section 13-6-20, shall constitute notice to the world of each and every of the rights of the person secured by such mortgage.

Section 13-6-20 reads, in pertinent part:

Filing of mortgage.- The holder of any chattel mortgage on a motor vehicle desiring to secure to himself the rights provided for in this article, and to have the existence of the mortgage and the fact of the filing thereof for public record noted on the certificate of title to the motor vehicle thereby encumbered, shall present said mortgage . . . and the certificate of title to the motor vehicle encumbered, to the authorized agent . . . .  Upon the receipt of said mortgage . . . and certificate of title, the authorized agent, if he be satisfied that the vehicle described in the mortgage is the same as that described in the certificate of title, shall make and subscribe a certificate to be attached or stamped on the mortgage and on the certificate of title in which shall appear the day and hour on which said mortgage was received for filing, . . . the day and year on which said mortgage was filed for public record . . . .

CCTA's fundamental purpose of providing protection of the mortgage from third parties through effective notice.  Compare id. with supra, n.7.; see generally B. Summ., S.B. 00-015, 62nd General Assemb., 2nd Reg. Sess. (Colo. 2000)(providing no indication that purpose of 2000 amendments went beyond the mere creation of an electronic database and the encouragement of its use through electronic filing).  Simply, instead of providing notice through notation on the face of the certificate of title, in 2004, notice was achieved through entry of the mortgage notice in the Central Registry.[8]

Based on the consistent judicial construction of the CCTA illustrated in the cases above, and acknowledging the Act was fundamentally the same in 2004 as it was when initially construed in Lowen and Loye, these cases are persuasive regarding proper interpretation of the Act.  People v. Swain, 959 P.2d 426, 430-31 (Colo. 1998)("[T]he legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior

---

[8]After the 2000 CCTA amendments, it appears lien notation on the certificate of title may have been a valid means of perfection even in 2004, because the General Assembly intended "statewide implementation of electronic filing [be complete] no later than July 1, 2006."  § 42-6-147.

18

judicial construction.").[9, 10]

Nonetheless, because I must construe the CCTA as a whole "to give a consistent, harmonious, and sensible effect to all its parts," City of Ouray v. Olin, 761, P.2d 784, 788 (Colo. 1988), I conclude the above analysis does not fully resolve the precise timing issue of perfection that is before me.

Appellants raise two interrelated issues revolving around the meaning of "file" under the CCTA and its use in sections 120, 121, and 130. Appellants essentially contend the term "filing" as used in the CCTA cannot be confined to the definition of "File" set forth in section 102(4.4) of the Act. I agree with Appellants in this regard. As I have already indicated, "File" is "the creation of or addition to an electronic record maintained for a certificate of title by the director or an authorized agent of the director . .

---

[9]Section 120 has been amended at least twelve times since its adoption in 1949. See generally Colo. Rev. Stat. Ann. § 42-6-120 (2005)(listing sources for 2005 law); Colo. Rev. Stat. Ann. § 42-6-119 (1973)(same for 1973 law). Similarly, section 121 has been amended at least eight times since its adoption in 1949. See generally Colo. Rev. Stat. Ann. § 42-6-121 (2005)(listing sources for 2005 law); Colo. Rev. Stat. Ann. § 42-6-120 (1973)(same for 1973 law).

[10]It is worth noting CCTA sections 120 and 121 were amended in 2005 and 2006. 2005 Colo. Sess. Laws 817-18 (Section 120 only); 2006 Colo. Sess. Laws 640-41. Without deciding the issue, it appears by these amendments the General Assembly attempted to sever perfection of a motor vehicle lien from the "old" procedure and policies that were entirely dependent on issuance of a certificate of title. As much as Appellants urge these amendments are helpful in ascertaining the legislative intent behind the 2004 CCTA, I disagree. I have reviewed the legislative history surrounding both amendments, including the pertinent committee hearings, and that information is inconclusive as to whether the 2005 and 2006 amendments were mere clarifications of the "old" act or marked changes in CCTA procedure and policy. As such, they fail to illuminate the General Assembly's intent behind the 2004 CCTA.

. .." Supra, n.5 (citing § 42-6-102(4.4)).  The introductory portion of section 102

indicates, however, the above definition of "File" applies "*unless* the context [of the Act]

requires otherwise."  (emphasis added).  As I illustrate below, there are several instances

where the General Assembly does not appear to have intended for the technical definition

of "file" to apply.  I therefore agree with Appellants to the extent the meaning of "file"

must be ascertained from the context in which the word is used.

Acknowledging "file" may have different meanings under the Act, I note one key

instance in which it is clear the technical definition of "file" does apply.  Significantly,

the technical definition applies in section 121 where the authorized agent "shall file

within the director's authorized agent's motor vehicle database notice of such mortgage

or lien . . . ."  § 42-6-121.  The term's proximity and reference to the agent's electronic

database, the mechanism through which notice is achieved, is an unmistakable reference

to the "File" language of section 102(4.4).  I therefore disagree with Appellants to the

extent allowing the context of the Act to dictate the meaning of "file" alters the

unambiguous intent of the General Assembly as to when notice to the world of the

mortgage is achieved and perfection thus occurs.

However, Appellants also claim the term, as used in section 121's requirement that

the mortgage notice include the "day and hour received for filing," is a reference to the

time the mortgage and title paperwork are delivered to the county clerk, and when read

together with section 130, is evidence perfection was intended to occur upon delivery.

Appellants are partly correct on this point.

Appellants assert that delivery of the mortgage and title paperwork is the final act needed to achieve perfection and, it follows, the point at which perfection is achieved. As I have made abundantly clear, the final act necessary to achieve perfection is notice of the mortgage to third parties through its entry in the Central Registry. To the extent it appears the General Assembly intended to make perfection retroactively effective to the time of delivery, Appellants are correct.

Section 130 states,

> The liens of mortgages filed for record or noted on a certificate of title to a motor vehicle, as provided in section 42-6-121, shall take priority in the same order that the mortgages creating such liens were filed in the office of the director's authorized agent.

§ 42-6-130.

At the threshold, I note the context of the second reference to "filed" suggests a parting from the technical definition of "file" set forth in section 102(4.4). While filing for record evokes notions of "creation of or addition to an electronic record," filing in the office of an authorized agent implicates a different type of filing. The logical inference is that filing in the agent's office is delivery of the mortgage and title paperwork, See Black's Law Dictionary 508 (7th ed. 2000)(defining filing as the delivery of a document to a court clerk or custodian of records), which is also the first step a creditor must take to perfect its interest. Supra, at 10 (interpreting plain language of § 121). Thus, in the

21

context of section 130, Appellants are correct to the extent they argue the "day and hour" of delivery must be recorded and included in the mortgage notice pursuant to section 121, because *lien* priority is assigned according to the day and hour the mortgage paperwork is received.  § 42-6-130.

That section 130 is a relation back provision is supported by observing the different treatment given to mortgages and liens under the Act.  A lien is not a mortgage under section 130.  Although "lien" is undefined in the CCTA, "'[m]ortgages' or 'mortgage' or 'chattel mortgage' [are] chattel mortgages, conditional sales contracts, or any other like instrument intended to operate as a mortgage or to *create a lien* on a motor vehicle as security for an undertaking of the owner thereof or some other person."  § 42-6-102(6)(emphasis added).  Cross referencing this definition with section 130, which indicates liens "take priority in the same order that the mortgages *creating such liens* were filed," in the agent's office, filing a mortgage and filing a lien are two distinct acts undertaken under the CCTA, each with unique significance.  Filing a mortgage in the clerk's office establishes the priority of the forthcoming lien, and once the mortgage and title paperwork is reconciled and approved, the filing of the lien for public record is the final act necessary to achieve perfection.

Although the CCTA lacks express language relating perfection back to the time of delivery, the interplay between sections 120, 121 and 130 has a relation back effect.  This conclusion is contrary to Judge Tallman's interpretation of the CCTA in <u>Baker</u>, in which

22

he held the Act does not have a relation back feature because it contains no express

relation back language.  Baker, 338 B.R. at 477-78.  I find no binding authority, however,

suggesting express relation back language is necessary before a statute can be found to

operate in such a manner.  See In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 12 (1st Cir.

2001)(agreeing with the Second Circuit "there is no requirement that the 'generally

applicable law' referenced in section 546(b) contain an explicit relation-back

mechanism").  Rather, the key inquiry regarding the existence of a relation back

mechanism is whether the statute in question "authorizes perfection after another party

has acquired interests in the property."  See Klein v. Civale & Travato, Inc. (In re Lionel

Corp.), 29 F.3d 88, 93 (2d Cir. 1992).  Under the CCTA, because section 130 assigns

motor vehicle lien priority according to the time the mortgage paperwork is delivered,

once perfected, the lien would be superior to certain third party interests acquired in the

vehicle after the delivery date.  See § 42-6-130.  The CCTA thus meets the criteria in

Lionel, and I therefore conclude section 130 relates perfection back to the time of

delivery.

Based on the above analysis, the final act for perfection is the entry of the lien

notice into the Central Registry.  Once this occurs, however, perfection relates back to the

time the mortgage and title paperwork were delivered to the authorized agent.

Applying this rule, I conclude the security interests in the Baker and Wilson cases

are avoidable, and the enabling loan exception does not apply, because the final act

necessary for perfection - the entry of the lien notices into the Central Registry - did not occur within twenty days of the debtors taking possession of their vehicles.

Accordingly, although I do so on different grounds, I agree with the bankruptcy courts that the security interests in <u>Baker</u> and <u>Wilson</u> are avoidable.  I therefore AFFIRM their holdings to the extent they are not inconsistent with this Order.

Concerning the <u>Ramey</u> case, I note Appellants have requested a remand to the bankruptcy court for further proceedings if I conclude perfection under the CCTA is deemed to relate back to the time of delivery.  (Appellant's Supplemental Consolidated Opening Br. 8, n.1.)  Specifically, Appellants have raised the issue of how C.R.S. § 4-9-317(e) affects the avoidability of their security interest in the context of a CCTA perfection scheme that permits relation back.  (Def's. Pretrial Statement Points of Law ¶¶ 8-10)  I express no opinion as to the merits of this claim.  I acknowledge the precarious position of a district court sitting in its appellate capacity on a bankruptcy case, however, and that any decision of mine has yet to be either affirmed or overruled by the Tenth Circuit should an appeal be filed.  In the interest of judicial economy, I hereby STAY consideration of Appellants' relation back/section 4-9-317(e) argument until either the deadline for appeal passes and no appeal is filed in any of the cases at issue today, or if an appeal is filed, the Tenth Circuit issues a decision either affirming or overruling my conclusion that the CCTA relates perfection back to the time the mortgage and title paperwork are filed with the county clerk.

### B. Equitable Relief is Inappropriate in the Cases at Bar

Appellants contend they are entitled to equitable relief pursuant to Commerce Bank v. Chambers (In re Littlejohn), 529 F.2d 356 (10th Cir. 1975). Appellees' response is two-fold. First, the trustee in Baker argues the equitable lien question is not appropriate for my consideration in that case because it was not raised in the bankruptcy court. Second, all Appellees claim the facts of Commerce Bank are distinguishable from those at issue here. I agree with Appellees' latter contention.

At the outset, I will consider Appellants' Commerce Bank argument in the Baker case. Although issues not raised in the trial court generally may not be raised for the first time on appeal, this rule is not absolute and a court may address such issues in its discretion. Sussman v. Patterson, 108 F.3d 1206, 1210 (10th Cir. 1997). Because, with the exception of Baker, the parties in the Wilson and Ramey cases have fully briefed the Commerce Bank equity argument, consideration of this issue in Baker would have only a minimal impact on judicial economy. Moreover, the Appellee in Baker will not be prejudiced as it has made its position on the merits of the Commerce Bank equity issue known. Accordingly, I consider the Commerce Bank argument of the Appellant in Baker in my analysis today.

Nonetheless, I conclude the facts in Commerce Bank are distinguishable from the circumstances at issue here, and therefore Appellants are not entitled to equitable relief under the theory of that case.

25

In Commerce Bank, the Tenth Circuit invoked equitable principles to uphold an unperfected lien against the trustee in bankruptcy after concluding Kansas' certificate of title statute imposed an unfair burden on creditors seeking to perfect their interests. Commerce Bank, 519 F.2d at 357-58.  Specifically, the Kansas statute required a number of documents to be filed, ranging from a certificate of title application to proof the purchaser paid personal property taxes, and although the purchaser/debtor had the burden of filing those documents, the creditor bore the risk its interest would not be perfected in the event the purchaser failed to file those items.  Id. at 358.  Additionally, as the facts in that case illustrate, the Kansas certificate of title statute effectively gave purchasers/debtors who were contemplating filing bankruptcy a disincentive to promptly file the abovementioned paperwork.  See id. at 357-58 (debtor in bankruptcy taking advantage of perfection scheme in which it was the debtor's responsibility to obtain the certificate of title).

Unlike the Kansas certificate of title act at issue in Commerce Bank, however, the CCTA places both the burden of perfection and the risk of failure to do so on the creditor. See §§ 42-6-120, 121.  To the extent it could be argued the creditor has no control over the county clerk's entry of the lien and title information into the Central Registry, and a creditor could be prejudiced by the clerk's delay in doing so, the General Assembly has chosen to deal with this issue by giving the creditor the power to establish its lien priority upon delivering its mortgage and title information to the county clerk.  See § 42-6-130. The CCTA thus gives the creditor strong incentive to start the perfection process

promptly.  See id.  Additionally, unlike the purchaser/debtor in Commerce Bank, the county clerk has no incentive to delay entry of the lien and title information into the Central Registry.  Rather, the county clerk must carry out its duties under the CCTA using "reasonable diligence."  See § 42-6-117(1).  Hence, the CCTA strikes a balance between the creditor's interest in perfecting its lien promptly and various state interests, including "provid[ing] a method whereby the licensing authorities may check and control the chain of title as it passes from one private purchaser to another, to the end that bogus or illegal transactions may more easily be protected."  Codding v. Jackson, 132 Colo. 320, 326, 287 P.2d 976, 979 (Colo. 1955).

The distinctions between the CCTA and the Kansas certificate of title statute at issue in Commerce Bank are clear and material.  Most importantly, the CCTA addresses the perfection process, including the time perfection both occurs and is effective, as well as the allocation of attendant risks and burdens, in a comprehensive scheme significantly more fair to the creditor than the statute at issue in Commerce Bank.  In light of the General Assembly's clear intent regarding the method for perfecting a security interest in a motor vehicle, invoking equitable principles to hold Appellants' liens valid against the trustees in bankruptcy is inappropriate.  See Consarc Corp. v. U.S. Treasury Dept., OFAC, 71 F.3d 909, 915 (D.C. Cir. 1995)("Even a well-founded claim in equity would not suffice to override the plain effect of the law.").  Indeed, not only would extending Commerce Bank to provide equitable relief here interfere with the CCTA's purposes and calculated mechanisms for serving them, doing so would effectively nullify the CCTA as

27

it applies in the bankruptcy context.

As lower courts addressing this issue have noted, the CCTA reflects various policy choices of the General Assembly, see, e.g., Peters v. WFS Fin., Inc. (In re Glandon), 38 B.R. 103, 109 (Bankr. D. Colo. 2006), and if creditors may suffer as a result of the CCTA's intended operation, such is a matter for the General Assembly to address and not this court through the imposition of equitable relief.  See Union Bank & Trust Co. v. Baker (In re Tressler), 71 F.2d 791, 793 (3d Cir. 1985)(directing creditor to seek relief in state legislature where similar problem arose under Pennsylvania certificate of title act).

Because equitable relief is neither warranted nor appropriate in the circumstances before me, relief based on the holding in Commerce Bank is hereby DENIED, and I AFFIRM the lower courts' holdings in this regard.

### C. *Appellants Have Insufficiently Pleaded Their Fourteenth Amendment Claims*

Appellants contend the CCTA, as it applies in the bankruptcy context, operates to deprive them of their liens in violation of the due process protections of the Fourteenth Amendment.  In response, Appellees argue the clerk's involvement in the perfection process is insufficient state action to constitute a due process violation.  Alternatively, Appellees assert Appellants' due process claim is not proper for my consideration because Appellants failed to comply with Local Bankruptcy Court Rule 218, and in the cases of Baker and Ramey, neglected to raise the due process issue in the bankruptcy court.

Without addressing the merits of any of the parties' arguments, I conclude Appellants' due process claims are not properly before me.  To maintain a successful due process challenge, a claimant must first establish a constitutionally protected property interest.  See Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004).  If the claimant can do so, then the court must assess whether the governmental deprivation of that interest occurred without due process.  See id.

However, to enable the court fully to assess the sufficiency of the process available to the claimant, the claimant must not only allege inadequacy of "the procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation," but must likewise allege the inadequacy of "any remedies for erroneous deprivation[] provided by statute or tort law."  See Zinermon v. Burch, 494 U.S. 113, 126 (1990)(issuing holding in context of § 1983 claim); see also Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 519 (10th Cir. 1998)(noting the availability of remedies under state law relevant to the question of whether § 1983 claimant was afforded due process).  A failure to allege the non-existence of constitutionally adequate state law remedies is sufficient grounds to dismiss a procedural due process claim.  Rumford Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 999 (2d Cir. 1992)(citing Zinermon, 494 U.S. at 126)(dismissal appropriate where appellant claimed unreasonable delay amounted to procedural due process violation but failed to allege that state remedies were insufficient).

Here, even assuming Appellants can show they were deprived of a constitutionally

protected property interest through state action, none of the Appellants, in either their bankruptcy court pleadings or appellate briefs, have addressed what remedies might be available under Colorado law for an agency's failure to perform an official duty in a reasonable time.  See, e.g., Atkinson v. City of Fort Collins, 583 F.Supp. 567, 569 (D. Colo. 1984)(noting the availability of the writ of mandamus under Colo. R. Civ. P. 106, through which government officials can be forced to follow certain laws).  Thus, absent my undertaking an assessment of the various mechanisms for relief that are, or more importantly, are not, available to creditors in Appellants' position, it is impossible to evaluate whether Appellants were deprived of due process.

Accordingly, without deciding whether adequate remedies exist under Colorado law for the governmental deprivations Appellants allege occurred here, I conclude their due process pleadings are infirm and therefore DISMISS those claims with prejudice.

## Conclusion

Perfection of a security interest in a motor vehicle in Colorado occurs upon entry of the mortgage and title information into the Central Registry.  Once it occurs, perfection relates back to the time the mortgagee delivered its mortgage and title paperwork to the county clerk.  As such, although I do so based on a different interpretation of the CCTA, I AFFIRM the lower courts' conclusions that Appellants' liens were avoidable in Baker and Wilson.

To the extent the Appellant in Ramey claims its interest was nonetheless perfected

pursuant to section 317 of the Colorado UCC, I hereby STAY consideration of that issue until an appeal is filed and a ruling on the matter from the Tenth Circuit is issued, or in the event the time for appeal expires, no appeal is filed.

Regarding Appellants' claim for equitable relief, I AFFIRM the lower courts' holdings that equitable relief is not appropriate under the circumstances at issue in these cases.  Finally, I DISMISS Appellants' claims for relief based on due process violations of the Fourteenth Amendment.

Dated this 27th day of June, 2006.

BY THE COURT:

s/John L. Kane_____
Senior Judge, United State District Court